**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


Lisa Ann Pavich,
**Intervenor Below, Petitioner**

**v.)  No. 22-0487** (Harrison County 19-P-214-1)
**American Pride Properties, LLC,**
**Petitioner and Counterclaim Defendant Below,**
**and S.F., a Protected Person,**

**Respondent and Counterclaim Plaintiff Below,**
**Respondents**


## MEMORANDUM DECISION


Petitioner Lisa Ann Pavich appeals the Circuit Court of Harrison County's June 1, 2022, order denying her "motion to not accept" the settlement between Respondent S.F. and Respondent American Pride Properties, LLC ("American Pride").[1] The petitioner argues that the circuit court abused its discretion when it denied her objection and enforced the settlement agreement and that the court-appointed guardian ad litem failed to protect the interests of Respondent S.F. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

Respondent S.F. owned a home in Bridgeport, West Virginia, where she resided with her adult son, J.F. In 2016, she suffered a stroke, leaving her unable to care for herself and J.F. became her caretaker. Following her stroke, property taxes on the residence were not paid, and the property was sold at a tax sale to an entity called WV TL LLC RAI Custodian and was subsequently transferred to American Pride. American Pride filed a petition to quiet title to the property in November 2019. J.F. obtained counsel for his mother and represented that she was not competent to manage her own affairs. Respondent S.F., through her son and next friend J.F., filed an answer,

---

[1] The petitioner is represented by counsel Wayne King. Respondent American Pride is represented by counsel O. Gay Elmore Jr. Respondent S.F. is currently self-represented through Petitioner Pavich, her daughter, who was appointed her guardian and conservator during the pendency of this appeal. The guardian ad litem appointed for Respondent S.F. for the purposes of this litigation in the circuit court, Dreama Sinkkanen, did not make an appearance. Because this matter concerns sensitive facts, we use initials where necessary to protect the identity of those involved. W. Va. R. App. P. 40(e).

1

in part disputing proper service of notices related to the tax sale and the right to redeem the property, and a counterclaim.[2]

The parties reached a proposed settlement; however, J.F. could not present a general power of attorney for Respondent S.F. and so, in December 2020, the parties jointly moved for the appointment of a guardian ad litem for her as part of a motion to approve the proposed settlement. The circuit court appointed Dreama Sinkkanen as Respondent S.F.'s guardian ad litem on February 2, 2021, directing her to make an independent assessment of the proposed settlement and to protect Respondent S.F.'s interests in this litigation. The parties presented the proposed settlement terms to the court in March 2021, which included payment of $100,000 to Respondent S.F., less attorney's fees paid to her then-counsel in the amount of $15,000, and a provision that Respondent S.F. could reside in the property pursuant to the terms of a residential lease agreement until June 30, 2022. Ms. Sinkkanen filed an answer opining that the settlement was in Respondent S.F.'s best interests and recommending approval of the settlement. She also recommended that court approval of the settlement be conditioned on a legal guardian and conservator for Respondent S.F. being appointed to protect her interests and ensure an independent accounting of the settlement proceeds. The court tentatively accepted the proposed settlement at the March 2021 hearing, with the understanding that a guardianship action would be initiated.

In April 2021, Respondent S.F. presented a proposed order addressing the March 2021 hearing, with the relevant settlement documents attached. American Pride then filed a motion to revise the settlement agreement, identifying non-substantive errors in it and seeking to insert a confidentiality provision.[3] Respondent S.F.'s counsel objected, arguing that correction of non-substantive errors was not required and that there was no meeting of the minds on the addition of a confidentiality term. Ultimately, according to the circuit court docket sheet, American Pride's motion to revise the settlement agreement was withdrawn. In May 2021, J.F. passed away, and the petitioner intervened, filing a notice of appearance and objection to the settlement. Although she purported to file her objection on behalf of Respondent S.F., the petitioner was referred to and treated as an intervenor by the court.

In August 2021, the circuit court held a status conference and subsequently, on October 5, 2021, entered an order directing Respondent S.F.'s counsel to continue to represent her interests and confirming that counsel for Respondent S.F., counsel for American Pride, and the guardian ad litem each believed and understood that it had reviewed and approved the terms of the settlement at the hearing in March 2021. However, the court set a schedule for the petitioner to move to set aside the previously approved settlement. The petitioner then filed a "Motion to the Court to Not Accept the Proposed Settlement," arguing that she represented Respondent S.F. The petitioner

---

[2] Respondent S.F.'s counterclaim was filed against "Context Business Lending and Accord Family Office dba American Pride Properties LLC, WV TL LLC, WV TL LLC RAI Custodian, and TL Holdings LLC." The petition filed by American Pride also named other defendants, which were later dismissed, one without prejudice.

[3] In the order on appeal, the circuit court also noted an issue between the parties regarding the interest amount, if any, applied to the settlement funds prior to a formal guardianship or conservatorship being established that was arguably included in American Pride's motion.

alleged that J.F. had significant personal issues, took and used Respondent S.F.'s money and credit, allowed the home to deteriorate, and similar issues. The petitioner alleged that funds were available to reclaim the home and that the home was debt free until J.F. took over. The petitioner also contended that Respondent S.F. could understand things "if explained to her to some extent," and presented what she represented as a power of attorney. However, the petitioner, in the same motion, referred to Respondent S.F. as an incompetent person who could not have been personally served with regard to the past-due taxes leading to the sale. The court heard the motion on November 2, 2021, and entered an order on November 12, 2021, following that hearing. In that order, the court noted that the respondents clarified that they had submitted for approval a new proposed order relating to the settlement terms and that all disagreements regarding the language of the prior order had been resolved. It also noted that during the hearing, Ms. Sinkkanen affirmed her approval of the proposed settlement and represented that she had no objection to the new version of the proposed order.

The circuit court denied the petitioner's motion in an order entered June 1, 2022, fully and finally resolving her objections as an intervenor, and approved the settlement. In its findings of fact, the court noted that Ms. Sinkkanen "found that the settlement was within [Respondent S.F.'s] best interest" and that she stated "even with the problems with [J.F.], the settlement was fair and in the best interest" of Respondent S.F. The court concluded that J.F. had the ability, during his life, to bind Respondent S.F. to a settlement. It further found that petitioner did not show by clear and convincing evidence that there was "accident, mistake, or fraud" relevant to the settlement of the parties. It also concluded that the settlement was fair and reasonable based on Respondent S.F.'s financial and physical situation and that there was a meeting of the minds as to the settlement agreement. Additionally, the court found that the motion to revise filed by American Pride involved merely supplementary terms of the agreement and concluded that the settlement agreement was binding. The petitioner now appeals.[4]

Before addressing the petitioner's assignments of error, we must properly orient our review. Although the petitioner purported to file the underlying motion and objection on behalf of Respondent S.F., she was deemed an intervenor by the circuit court, and she does not assign error to the court's treatment of her as an intervenor in its evaluation of her motion here. Furthermore, in addition to counsel, Respondent S.F. had a court-appointed guardian ad litem for the purposes of this settlement, and, on appeal, the petitioner does not assign error to the treatment of Respondent S.F. as a protected person by the court or assign error to the court's appointment of a guardian ad litem in this case. Accordingly, this appeal only involves the denial of the petitioner's motion as an intervenor to "not accept" the settlement in the court's June 1, 2022, order. As the issue of enforceability of this settlement required findings of fact and application of legal principles, we review the court's factual findings under a clearly erroneous standard, questions of law de novo, and the final order and ultimate disposition under an abuse of discretion standard. Syl. Pt. 2, *Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 245 W. Va. 63, 857 S.E.2d

---

[4] During this appeal, by order entered April 25, 2023, the petitioner was appointed as Respondent S.F.'s guardian and conservator by the Circuit Court of Harrison County in a separate action. Respondent S.F.'s counsel then filed a motion to withdraw with this Court based on the petitioner's request and that motion was granted.

403 (2021); *see also* Syl. Pt. 1, in part, *Riner v. Newbraugh,* 211 W. Va. 137, 563 S.E.2d 802 (2002) (holding that we review a circuit court order enforcing a settlement agreement under an abuse of discretion standard).

Here, the petitioner first argues that the circuit court abused its discretion by enforcing a settlement agreement without a meeting of the minds because: 1) J.F. only had Respondent S.F.'s medical power of attorney and therefore had no authority to bind her to the agreement; 2) it was unclear if the appointed guardian ad litem, Ms. Sinkkanen, participated in negotiating the terms of the settlement; and 3) because there were remaining issues in dispute between the parties, namely the payment of interest on the settlement funds and the confidentiality provision proposed by American Pride. It is well-settled that, in most circumstances, settlements are encouraged and favored. *See* Syl. Pt. 1, *Sanders v. Roselawn Mem'l Gardens*, 152 W. Va. 91, 159 S.E.2d 784 (1968) ("The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy."); *accord Riner*, 211 W. Va. at 139, 563 S.E.2d at 804, Syl. Pt. 5. "'A meeting of the minds of the parties is a Sine qua non of all contracts.' Point 1, syllabus, *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859 [1932]." Syl. Pt. 1, *Wheeling Downs Racing Ass'n v. W. Va. Sportservice, Inc.*, 157 W. Va. 93, 199 S.E.2d 308 (1973); *accord Riner*, 211 W. Va. at 139, 563 S.E.2d at 804, Syl. Pt. 4. "Where parties have made a settlement[,] . . . such settlement is conclusive upon the parties thereto as to the correctness thereof in the absence of accident, mistake or fraud in making the same." Syl. Pt. 1, in part, *Calwell v. Caperton's Adm'rs*, 27 W. Va. 397 (1886).

In this case, J.F. participated on behalf of Respondent S.F. as her son and next friend, as permitted under West Virginia Rule of Civil Procedure 17(c), which, in pertinent part, provides that "[a]n . . . incompetent person . . . who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." We have also held, in Syllabus Point 2 of *Marcum v. Marcum*, 164 W. Va. 567, 264 S.E.2d 625 (1980), that "[w]here there is no duly qualified representative. . . an offspring of the incompetent has standing to act in the capacity of next friend pursuant to Rule 17(c) W.Va.R.C.P. and the Court may determine if the interests of the offspring are antagonistic to the incompetent person whose interests he represents." Therefore, J.F. had the standing to act in the capacity of next friend for Respondent S.F. to defend, litigate and negotiate settlement terms in this case, despite the lack of a general power of attorney.[5] Thereafter, a guardian ad litem was appointed to independently assess the proposed settlement terms on behalf of Respondent S.F., and she found the terms to be fair and in Respondent S.F.'s best interests. The circuit court likewise reviewed the settlement and found it to be fair and reasonable. By requiring this review and approval, the court ensured that J.F.'s interests were not antagonistic to Respondent

---

[5] Although the circuit court referred to J.F. in the June 1, 2022, order on appeal as Respondent S.F.'s "next of friend/ Power of Attorney," based on our review of the record on appeal as a whole, it is clear that any error in referring to J.F. possessing a general power of attorney was harmless given that the court was aware of J.F.'s status as next friend and appointed a guardian ad litem to review the settlement. This demonstrates that the court did not inappropriately rely on a medical power of attorney or on J.F. possessing a general power of attorney for Respondent S.F. in reaching its findings and conclusions and approving the settlement.

S.F.'s interests in this litigation and made appropriate orders for the protection of Respondent S.F.'s interests. As a result, the terms of the settlement were appropriately agreed to between the parties, reviewed and recommended by the guardian ad litem as fair and reasonable, and approved by the court.[6] Further, based on our review of the record on appeal, we agree with the court that American Pride's motion to revise the settlement related to supplementary settlement terms, not ambiguity in the agreed terms, and did not indicate a lack of a meeting of the minds on the proposed settlement.[7] Accordingly, we find no reversible error or abuse of discretion by the court in its conclusion that there was a meeting of the minds between the parties on the terms of the settlement.

Next, the petitioner argues that Ms. Sinkkanen failed to protect the interests of Respondent S.F. In support, she argues that, in Ms. Sinkkanen's evaluation, she used only the assessor's value of the property, rather than determining the actual property value and challenges the June 30, 2022, lease termination date.[8] Although there are no findings in the order on appeal directly related to the details of Ms. Sinkkanen's analysis, we construe the petitioner's arguments to be a challenge to the circuit court's finding that Ms. Sinkkanen concluded the settlement was "within [Respondent S.F.'s] best interest" and its conclusions that the settlement "was fair and reasonable in respect to [Respondent S.F.'s] financial and physical situation" and that the petitioner failed to demonstrate accident, mistake, or fraud as to the settlement by clear and convincing evidence.

---

[6] The petitioner's change in status to Respondent S.F.'s guardian during the pendency of this appeal does not alter the result in this case. First, as discussed above, the parties reached agreement on the settlement terms, Ms. Sinkkanen was appointed by the circuit court as guardian ad litem and filed her answer, and the court had held a hearing and approved the settlement terms subject to guardianship proceedings being completed, all prior to the petitioner's notice of appearance and objection and prior to her becoming Respondent S.F.'s guardian and conservator. Second, "[a] party to [a] settlement seeking to re-open the same on any of said grounds must distinctly allege and by clear and convincing evidence prove[] the particular facts, wherein such accident, mistake or fraud consists, and failing to do this, his bill will be dismissed." *Calwell*, 27 W. Va. at 397, Syl. Pt. 3; *accord* Syl. Pt. 8, *DeVane v. Kennedy*, 205 W. Va. 519, 519 S.E.2d 622 (1999). The burden is on the petitioner to show the grounds for re-opening the settlement. *Calwell*, 27 W. Va. at 397-98, Syl. Pt. 4. Here, for the reasons set forth above, the petitioner does not meet this burden.

[7] In addition, as stated above, American Pride's motion was withdrawn.

[8] The petitioner argues before this Court that Ms. Sinkkanen failed to update or correct her response related to the benefit to Respondent S.F. of living rent-free in the residence until June 30, 2022, given the passage of time between the filing of her answer and the hearing on the petitioner's motion. This argument does not appear to have been raised below and so we do not separately address the contention that Ms. Sinkkanen's opinion should have been updated. Syl. Pt. 2, *Sands v. Security Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance."). Our review of the June 30, 2022, date of the conclusion of the lease term is limited to the arguments made below by the petitioner regarding whether the settlement was in the best interests of Respondent S.F.

Ms. Sinkkanen was tasked with protecting Respondent S.F.'s "interests in the prosecution or settlement of this litigation." The circuit court also instructed Ms. Sinkkanen to "review the benefits and drawbacks" of the proposed settlement and "make an independent assessment" as to whether the proposed terms and agreement were fair and in Respondent S.F.'s best interests. In her role as guardian ad litem, Ms. Sinkkanen filed an answer thoroughly explaining her assessment of those terms in light of the situational factors in this case, including the income, health, and age of Respondent S.F.; back taxes owed on the property; value of the property utilizing the assessed property value to compute the actual value; value of rental costs in the Bridgeport area for the time after the tax sale and as extended under the settlement; the lack of a guaranteed result and potential for a lack of funds to pay future taxes; property maintenance and insurance costs should she prevail, on top of attorney's fees; and that the proposed settlement would provide Respondent S.F. with additional funds to meet her personal care needs going forward. The court's order indicates that it considered Ms. Sinkkanen's detailed answer and opinion, and it made its own evaluation and conclusions. Further, in the order on appeal, the court noted that Ms. Sinkkanen considered the reported problems related to J.F., yet still believed the settlement was fair and in Respondent S.F.'s best interests. Critically, the petitioner failed to present sufficient evidence in support of her contrary claims. Accordingly, we find no error or abuse of discretion in the court's conclusions that the settlement was fair and reasonable under the facts of this case, that there was no accident, mistake, or fraud in the terms, or its acceptance of the settlement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  September 24, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice C. Haley Bunn

Bunn, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.

6